Good morning. I'm John Rhodes from the Missoula Office of the Federal Defenders of Montana. I represent Eric Fevold. Fevold. There we go. I got every other pronunciation except that one. There was not a substantial basis for probable cause in the search warrant application. The good faith exception does not save the lack of probable cause, and for that reason, all the evidence seized from Mr. Fevold, including his resulting admissions, should be suppressed. Starting with the failure of the application to contain actual images of the supposed child pornography, the case law is clear that the failure to attach the supposed child pornography in and of itself is not fatal to probable cause. I don't quite get that. I mean, you see a guy standing on a street corner, and people walk up to him, hand him cash, walk away with little bags of things, and you stop and you say, what you got in your bag? And one guy says, I've got heroin in it, and you sort of let him go or not. And then somebody else does the same thing. You say, what you got in your bag? And they say, oh, I've got some marijuana. And then you have somebody walk in and do the same thing and come back and you've got methamphetamine. And then somebody else comes, and you don't look what's in the bag, and you get a search warrant. Can't you sort of assume that the thing that they got from the guy who's selling all those things is in the same class as everybody else who walks off with a little bag of stuff? I mean, you look at certain legal substance. Why is that a fair inference? And isn't that really what happened here, except that instead of a street corner, we have a Web page? First, Your Honor, there you're dealing with admissions that the item is illegal. Here there were no admissions that were part of the search warrant application. But they don't have to be actually legal. It's enough that it be – I mean, you look in, and it looks like marijuana. It looks like, you know, I think agents are trained to sort of smell marijuana and tell it's from oregano. Although it might not stand up in court. You know, for a jury, you might need to make chemical analysis. It's good enough. Why isn't it enough to say, look, we have lots of experience with this system of Web pages and this method of acquiring what we know to be child pornography, or, you know, it looks like child pornography. And so he goes to a Web site. We don't happen to have visited that Web site at that time. We visited it later, and sure enough, there's child pornography. Why is it not good enough? I don't get it. Well, using your example, if the agent says, I smelled it, it smelled like marijuana, I felt it, it felt like marijuana, that's part of the problem here. Not only were there no images, there were no descriptions. It was all conclusion, and there was no description of why this was child pornography because of the age of the people depicted, because of the acts that the people were supposedly engaged in. And in addition, there was no description of even the Web site. And that's incredibly important because Web sites – I'm not following you, Your Honor. Well, the ID, the identity that was given for the Web site that the officers went to later. The one that they went to two months later? Yes. All they said was it contained child pornography. There was no description. It had a similar – it didn't have – it didn't have a – it left off angel collection 10-0-0, whatever. Yeah, 1-0-0-6, Your Honor. Right. And then the one they saw two months later, it just had the identity number. What's the URL? The URL was the referring link. Wasn't it the same? And that's my point, is there was no description of the Web site. They didn't – they just – Judge Kaczynski said when they went to the Web site, when they viewed it, they later stated in their affidavit that they had saw child pornography. Correct. All they said was they saw child pornography. They didn't describe the Web site in terms of this is what the Web site looked like, this is how the Web site operated, this Web site had child pornography, this Web site had adult pornography, this Web site had bestiality. Isn't it proper for the magistrate judge to draw inferences based on what's in the affidavit? And that's the problem here. First, you have to rely on this conclusion. When I – we firmly believe there's a lack of good faith here because the agents omitted their failed purchase in November 13th. They didn't tell the magistrate about that, which is incredibly important because they were well aware that there was some sort of changing pattern that they were detecting, and in the midst of this pattern that they're aware of, they don't bother to tell the magistrate. When we went to the Web site that had the same name, we could not purchase access, and they withheld that information from the magistrate. So, yes, the magistrate has to make inferences, but here you have to infer that on September 30th, Mr. Feevold purchased access to a child pornography Web site because the agents, to their credit, admitted we never went to that actual Web site. We went to the referring advertising Web site almost two months later. Now, of course, they didn't tell the magistrate that in between them, when they tried to do this same process, it didn't work, and then that goes to my initial point that they never bothered to describe these Web sites. They just reached these conclusions without giving any of the substance in a qualitative sense of what was on the Web site and in a quantitative sense of what was on the Web site. It's possible that, to use an example, you can go to mba.com. It's about the National Basketball Association.  It's about all sorts of sports. These Web sites, they just said they contained child pornography images. They never explained how the Web site worked, what was there, what was the range of available information. And so, yes. I'm sorry. You keep saying that, but I'm not sure why it's important that they say, look, these Web sites had child pornography. Why does it matter if they also had Toasters or Picassos? So what? Because another problem is if you read the affidavit carefully, it never said when you went to these Web sites, the Web site the agent accessed two months later, which had a different name, that the agent downloaded child pornography. It didn't even say that child pornography was available and was downloadable. So that's another inference that has to be made. And if these Web sites had all sorts of images, it's relevant to whether somebody would go to that Web site with the purpose of downloading child pornography, which if they had done that would make them guilty of the possession and receipt allegations that were the criminal basis for seeking the search warrant. So that's why it's important. Can I come back to your complaint that there are conclusory statements of child pornography? I'm troubled by that myself because having authored United States v. Hill, based on the learned district in that case, which is to my left in this case, but we have an earlier case, Smith, that did in 1986, and the government relies on that, say that conclusory statements may be sufficient. But our jurisprudence seems to have gotten a little more refined over time. What's your take on that? Well, I agree. And the law favors, promotes, including the images, because it's the magistrate that is supposed to make the probable cause determination ultimately. And by having conclusory statements, you're shifting that decision to the executive branch. Plus, Your Honor, if you look at the case hall such as Smith, Battershell, in each of those instances there were individuals beyond the agents who said that this was child pornography. And at least one of the cases the people that were the actual victims said, yes, this person took pictures of me. And we have none of that here. All we have is this naked assertion. I'd like to reserve my remaining one minute if that's possible. Okay. Thank you. Good morning. May it please the Court and counsel, my name is Marcia Hurd, and I'm an AUSA from the District of Montana. I actually handled this case below and wrote the brief on appeal. The question is very simple, and this Court has set forth very clearly what it is. It is the search warrant that did the search warrant set forth probable cause that child pornography would be found on the place that was searched, which was Mr. Febbold's residence and the place that he shared with his parents. And why weren't, you know, why weren't these images provided to the magistrate? Well, I think the Battershell case explains that there are times when images can't be actually accessed or can't be attached. And in this case, this was an overarching criminal enterprise. But they did, didn't they have, they took screen shots. They took screen captures. They took screen shots, but they don't bother. So why couldn't they produce them? I don't believe that they couldn't have. They probably could have, Your Honor. They probably could have. Oh, and our case law is pretty clear that we would like, even notwithstanding Smith and the, you know, some time ago, we pointed out that, and it most recently is Battershell, you know, it's preferable to give the magistrate judge, so the magistrate judge can make a determination. And there's not even a description. What we're left with is relying on the implication of a referral URL of Cute Lit and Lolita Play. And the circumstantial evidence was a two-month gap between the time he's alleged to have accessed the website. That's true, Your Honor. And, you know, and all we've, and the magistrate judge has given a conclusory statement that it involves child exploitation. It's not even the terminology of the offending statute. Right. Why is this, why should we say that this warrant is, I mean, this affidavit is sufficient on its face? Well, Your Honor, I think several reasons. The first of which is the point that Judge Kaczynski made. You have to rely on the agent's good faith and their training and expertise to set forth various items. And that was done in this case. Both these agents, including C3 agent Matt Dunn, and then the agent who actually swore out the affidavit, Agent Johnsrud said, I have reviewed these images and they are child sexual exploitation images. Well, right. He said, actually, he said he believes. Right. I think that's kind of a term of art. I believe they are sexual exploitation images, in my opinion, they are. But he's a member of a restricted website along with a webpage that advertised it contained images of child pornography. Exactly. I.e., child sexual exploitation images. And I don't think that's any different than an agent saying, I was an undercover agent, I went in and I made a purchase, and I'm not a chemist, but it looked to me like I was buying cocaine or I was buying methamphetamine, or probably easier, I was buying marijuana. We don't have the proof that that's what it is, but we allege that it is. No, but child pornography is a term of judgment. And there are, as Battersea pointed out very carefully, there are certain things sexually explicit conduct, which is the language of the statute, is intercourse, sodomy, but there is the context content which comes under the heading of lascivious images that we discussed some length in Hill, where the magistrate judge actually had two photographs. They went through elaborate lengths in the opinion to discuss, to deal with the description that had been given. Now they couldn't provide the image because those were picked up from a development studio, and the images were gone, but the photographer, studio technician, was able to provide a description. But the description in one of the pictures described a child that could well have been a family photo. True, a bathtub photo. But the opinion was careful to describe, or the affidavit, I should say, was careful to describe a variety of aspects, the way the breasts were exposed, the pubic area, the dress, the posture, and everything else, from which the magistrate judge in that case could reasonably conclude that these were not just innocent photos. In Battersea, there is the discussion of the naked child in a bathtub. Yes. Okay. In that one, the court had trouble with. That's true. Okay. So in this case, what we're left with is a conclusion. That's true. In my opinion, this is child pornography. Based on my years of doing cases, it's my conclusion that it is. So from now on, the rule in the Ninth Circuit is all we have to do is have an agent who we're supposed to say is acting in good faith, and as long as the agent thinks it's child pornography, that's child, that's it. Why do we need the rest of the information in the affidavit? Well, I think the question is, if the agent who's been trained in this area and is doing this investigation believes it to be child pornography and fits in with the criminal enterprise here of selling child pornography, then is that enough probable cause for the magistrate to believe that there's a fair probability child pornography is child? So they should go in and seize this guy's computer and all of the hardware and everything else that's on the computer, just on the word of the DEA or whatever the agent is, the child porn. Well, I think so. So the rest of all of our jurisprudence is forget the description, forget the photos. You don't need to do that. All you need is an experienced porn agent, and that's enough to satisfy probable cause. Well, it could be. It's not preferable. I mean, I think that this Court has made very clear. It could be, right, but not preferable is what you're saying. Right. We've got clear law out here that says you really ought to do more. That's true. Absolutely. And it's not done more. You know, they just withheld the images in this case, and I'm having a little trouble understanding what the rule is in the Ninth Circuit anymore. If we say, well, it's preferable, but it's not necessary. True. Well, if I'm an agent, it may be preferable, but, you know, why go to the trouble? Let's just put in Joe Smith. He's got a lot of these cases, and he can say it's child porn, and the magistrate judge rubber stamps it because what's the magistrate judge supposed to base his independent evaluation on? I think on the credibility of the information presented within the warrant and the affiant's ability to make that determination. Would it have been preferable for him to say, on the advertising website I saw six pictures of children under the age of two. They were engaged in intercourse with an adult. Absolutely. Yes, that sure would be. Would have been preferable. Absolutely. But I don't believe that it's fatal to this case at all. In this case, we have a person who admittedly purchased access to the child pornography website through an advertising website that was nothing but child pornography. And there's no information contained in this case. And, in fact, all the information is this was nothing but a criminal enterprise devoted to child pornography. This was not a some of it's adult pornography, some of it's child pornography, some of it may be obscenity. This was a business of the home collection. Yes. The entire criminal enterprise was nothing but European-based child pornography access paid through subscriptions to a number of people within the United States and worldwide. And I think that even if you're still troubled by the probable cause aspect, then you have the good faith exception here. And Capriolo, which is also a Flickr case that's cited by the defendant and cited by the government, that's the Vermont case from 2008. And the difference in that case was they found there was no probable cause because that defendant didn't actually complete the purchase. He attempted it, but he didn't complete it. And that was a big distinction for the Capriolo district court. But then that court went on to say, but even if there is no probable cause, then there's a finding of good faith here. And that's, I think, you know, the other ultimate question is that there certainly is good faith on the part of this agent who swore out this search warrant indicating that there was probable cause to believe there would be child pornography found, that there was a fair probability based on Mr. Febbold's purchase of access to a child pornography site that there would be child pornography found. And in this case, we actually found about 40,000 images and movies of child pornography when the search warrant was done. I can't recall. I can't find another affidavit. Does the agent say that he has experience with child pornography? Does he qualify himself as an expert? He does. In the very beginning, we call it the I'm fabulous language. Is it in the E.R.s.? Yeah. In the very beginning of the affidavit, it would be excerpts of record, page 224. Your affiant has been involved in a number of investigations involving child pornography and the sexual exploitation of children and has received training in this area. And the testimony of him at trial supported that, that he had been doing a number of these cases, had done a number of search warrants. I'm sorry. 224 paragraph 1? Yeah, paragraph 1. It's the very bottom of that paragraph. And it talks about his training in that area and that he actually viewed the images that were submitted to him and believed them also to be child pornography images. So I think you do have the necessary qualifications here. This isn't a person the testimony showed at trial. This isn't a person who just picked up a, you know, somebody's form affidavit and went in and swore it and it was his first child pornography case. He'd done this for some period of time. Sorry, but what is his training? His training is he got 17 weeks at the criminal investigator training. I don't know how much of that had anything to do with child pornography. He's a resident agent in Great Falls. He has a bachelor's degree from the University of Minnesota. I don't know what they teach at Minnesota, but if it's child pornography, that's a new under-enrolled course at some other state. He goes further. Yeah, has a number of investigations. Okay. Yes, and then he talked about that actually as well at the trial. We had a combined bench trial suppression hearing, and so that issue was discussed all in one situation about what kind of training and experience that he had and how many cases he'd done and those kinds of things. So that's also contained within the excerpts of record. There are any further questions from the panel? What do you make of defense counsel's complaint about failure to divulge the November 13th attempt to access the website? I guess I see it as a red herring. The testimony that was presented at trial was that this was a huge operation. They had a number of undercover agents who were making purchases using basically I'm John Smith, I'm James Doe, I'm so-and-so with fake PayPal accounts and, you know, undercover accounts. And it was a huge operation that took a long period of time. And it's, as in the Capriol case, some of the transactions went through and some of them didn't. Sometimes their PayPal account was just basically rejected for whatever reason. But it doesn't go to the, I guess, the question of the child pornography or the good faith here. Should they have put that in? I don't see it as fatal in any way to the probable cause contained within this search warrant. Any other questions from the panel? Okay. Thank you. You have a minute for rebuttal. Thank you. First, the government said that, admittedly, Mr. Feevold purchased access to a child pornography website. The government never went to that website. We don't know that. On November 13th, the government thought it may be purchasing access to the same website. I thought they did go to that website a couple of months later. Am I confused about that? Yes, Your Honor. And it says in the affidavit they never purchased access to the same website. They went from the referring URL, the advertising website, the undescribed one, and they made a purchase from that website to what apparently is a different website. I see. They went to 2007 or something to a neighboring website. Yes. They did that on November. It was September 30th, Mr. Feevold's act that they did it on November 27th. Not disclosing the November 13th failure is critical. Why wouldn't the government tell the magistrate that? Is it too confusing? And if you look at the wording of this affidavit, it's confusing as it is. Moreover, in terms of this Court's case law, the government should be held accountable to it. They relied on this Court's case law in the affidavit, citing the Lacey case in discussing it and citing the Gord case in discussing it. Here they invoke the case law they want, but they don't discuss the case law regarding attaching images. And on top of that, they withhold the information about this November 13th event. And you put that all together, there's a lack of probable cause and there's not good faith. Okay. Thank you. Thank you, Your Honors. We'll stand for a minute.
judges: Kozinski, Fisher, Paez